**2025 WI 33**

# Supreme Court of Wisconsin



PLANNED PARENTHOOD OF WISCONSIN, ET AL.,
*Petitioners,*

*v.*

JOEL URMANSKI, ET AL.,
*Respondents.*

No. 2024AP330-OA
Filed July 2, 2025

The Court entered the following order on this date:

On July 2, 2024, this court granted the petition of petitioners, Planned Parenthood of Wisconsin et al., for leave to commence an original action. Given our decision in *Kaul v. Urmanski*, 2025 WI 32, ___ Wis. 2d ___, ___ N.W.3d ___, which is also being released on this date, the court has now concluded that this original action should be dismissed. Accordingly,

IT IS ORDERED that this original action is dismissed; and

IT IS FURTHER ORDERED that all pending motions and the proposed stipulation are dismissed as moot.

Statement of ANNETTE KINGSLAND ZIEGLER, J., with whom REBECCA GRASSL BRADLEY, J., joins.

¶1      I agree with the court that this case does not belong before us. The original action petition should not have been granted in the first place, as explained by the dissents to the order granting the original action petition. *Planned Parenthood of Wis. v. Urmanski*, No. 2024AP330-OA, unpublished order at 5–10 (Wis. July 2, 2024) (Rebecca Grassl Bradley, J., dissenting); *id.* at 10–12 (Hagedorn, J., dissenting) (order reprinted below).

¶2      Also, it is interesting that the court appears to pick and choose when to provide reasoning for dismissing a case. Sometimes it says nothing. *See Van Oudenhoven v. DOJ*, 2025 WI 25, ___Wis. 2d ___, ___ N.W.3d ___ (per curiam). Other times it explains why the case is being dismissed, such as declaring the case moot.

**FILED**
**07-02-2024**
**CLERK OF WISCONSIN**
**SUPREME COURT**



**OFFICE OF THE CLERK**

**Supreme Court of Wisconsin**

110 EAST MAIN STREET, SUITE 215
P.O. BOX 1688
MADISON, WI 53701-1688

TELEPHONE (608) 266-1880
FACSIMILE (608) 267-0640
Web Site: www.wicourts.gov

July 2, 2024

**To:**

Diane M. Welsh
Electronic Notice

Christa O. Westerberg
Electronic Notice

Will Kramer
Electronic Notice

Samantha R. Foran
Electronic Notice

Andrew T. Phillips
Electronic Notice

*Distribution list continued on Page 13.

You are hereby notified that the Court has entered the following order:

No. 2024AP330-OA        Planned Parenthood of Wisconsin v. Urmanski

On February 22, 2024, petitioners, Planned Parenthood of Wisconsin; Kathy King, M.D.; Allison Linton, M.D., M.P.H.; "Maria L."; "Jennifer S."; "Leslie K."; and "Anais L.,"[1] filed a petition for leave to commence an original action under Wis. Stat. § (Rule) 809.70, which included an averment that the three named respondent district attorneys were being "sued as class representatives of all 71 elected district attorneys in Wisconsin, acting in their official capacities, pursuant to Wis. Stat. § 803.08." The petitioners concurrently filed a motion for permission to proceed using pseudonyms and for associated relief, including a protective order requiring certain petitioners' identities to be kept confidential throughout the proceedings in this matter. On April 16, 2024, the court ordered respondents, District Attorneys Joel Urmanski, Ismael R. Ozanne, and John T. Chisholm, to file one or more responses to the petition and motion. District Attorneys Ozanne and Chisholm filed a joint response to the petition and motion on April 26, 2024. District Attorney Urmanski filed separate responses to the petition and motion that same day.

On April 25, 2024, a motion to intervene or, in the alternative, a motion to file an amicus brief along with a supporting memorandum, a proposed response, and supporting affidavits were filed on behalf of Wisconsin Right to Life, Wisconsin Family Action, and Pro-Life Wisconsin (the "Proposed Intervenors"). On April 29, 2024, petitioners filed a response opposing the motion to

---

[1] "Maria L.," "Jennifer S.," "Leslie K.," and "Anais L." are pseudonyms used in the original action petition and supporting affidavits to refer to four individual women petitioners.

Page 2
July 2, 2024
2024AP330-OA          Planned Parenthood of Wisconsin v. Urmanski

intervene, but stating they had no objection to the Proposed Intervenors filing an amicus brief. On May 6, 2024, District Attorney Chisolm filed a response in opposition to both the motion to intervene and the alternative motion to file an amicus brief.

In a separate order issued concurrently with this order, the court denied the Proposed Intervenors' motion to intervene, but granted their alternative motion to file their proposed response as a non-party brief opposing the petition for leave to commence an original action.

Upon consideration of the foregoing,

IT IS ORDERED that the petition for leave to commence an original action is granted, this court assumes jurisdiction over this entire action, and the petitioners may not raise or argue issues not set forth in the petition for leave to commence an original action unless otherwise ordered by the court; and

IT IS FURTHER ORDERED that the petitioners' motion to proceed using pseudonyms and for associated relief shall be held in abeyance pending further order of the court. The parties shall confer and shall attempt to reach a stipulation regarding the subject of the motion. In formulating a stipulation, the parties shall comply with applicable law regarding the use of pseudonyms and the sealing of portions of court files, including this court's decision in Doe 1 v. Madison Metro. School Dist., 2022 WI 65, 403 Wis. 2d 369, 976 N.W.2d 584. Within 14 days of the date of this order, the parties shall either file a stipulation or shall file a report specifying the items on which they agree and the areas on which they do not agree. For those items on which the parties agree, the stipulation or report shall include an explanation setting forth in detail why the parties' agreement complies with existing law. The court will consider any stipulation that is submitted and determine whether or not to adopt it. No stipulation will have any effect until approved by the court; and

IT IS FURTHER ORDERED that, within 14 days of the date of this order, petitioners shall file a motion for class certification pursuant to Wis. Stat. § 803.08 or a letter stating that the petitioners no longer seek the certification of a class of respondent district attorneys; and

IT IS FURTHER ORDERED that all further motions to intervene in this action shall be filed within 14 days of the date of this order; and

IT IS FURTHER ORDERED that a briefing schedule and a date for oral argument in this matter shall be established in future orders of the court.

KAROFSKY, J. (*concurring*). I agree with the court's order granting leave to commence this original action. I write separately to address some of the charges leveled by my colleagues' dissents.

Justice Rebecca Grassl Bradley engages in ad hominem attacks that would be more at home in an ill-advised late-night rant on social media than in a judicial writing—including attempts to

4

Page 3
July 2, 2024
2024AP330-OA            Planned Parenthood of Wisconsin v. Urmanski

paint the court as illegitimate, cell phone screenshots of celebrity tweets, and calling members of the majority—the horror—"lawyers."

How can Justice Rebecca Grassl Bradley have standing to criticize a colleague for signaling her values on the campaign trail while she did that on her own?[2] How can she call for the recusal of one of her colleagues when she herself voted against a stronger recusal rule while in the majority?[3] And how can she complain about the court granting an original action petition when in the past she too voted to grant original actions tackling controversial constitutional issues?[4]

Not much of the vitriol deserves to be dignified with a substantive response, except perhaps to note that in granting this case, this court is doing what many other state courts have done, both before and after Dobbs v. Jackson Women's Health Org., 597 U.S. 215 (2022)—considering a state constitutional challenge to an abortion-related statute.[5] Deciding important state constitutional questions is not unusual—it's this court's job.

For his part, Justice Hagedorn suggests that this court is bending the rules for this particular case, and that such rule-bending is evidence that we "play politics with [our] pet issues." While those allegations might make for good political rhetoric, they lack substance and distract from the core work of the court.

Here, the court is granting a petition whose resolution may depend on how we rule in another case, Kaul v. Urmanski, 2023AP2362. Justice Hagedorn offers no evidence for his

---

[2] For instance, Justice Rebecca Grassl Bradley's campaign produced a political mailer showing her holding a shotgun and wearing an NRA cap. Christine Fernando & Harm Ven Huizen, Wisconsin Supreme Court Candidates Often Speak out on Hot Topics. Only One Faces Impeachment Threat, Milwaukee Journal Sentinel (Sep. 19, 2023), https://www.jsonline.com/story/news/politics/2023/09/19/wisconsin-supreme-court-candidates-often-speak-out-on-hot-topics/70867124007.

[3] In re Rule for Recusal when a Party or Lawyer Has Made a Large Campaign Contribution, No. 17-01, unpublished order (Wis. Jun. 30, 2017). In the Open Rule Conference for this petition, Justice Rebecca Grassl Bradley described the recusal rule petition as "somewhat shocking in its disregard for the Wisconsin Constitution and the United States Constitution, particularly the First Amendment." See id. at 42 (Open Rules Conference transcript excerpt).

[4] See, e.g., James v. Heinrich, 2021 WI 58, 397 Wis. 2d 517, 960 N.W.2d 360.

[5] See, e.g., Hodes & Nauser, MDs, P.A. v. Schmidt, 440 P.3d 461 (Kan. 2019); Allegheny Reprod. Health Ctr. v. Pennsylvania Dep't of Hum. Servs., 309 A.3d 808 (Pa. Jan. 29, 2024); Valley Hosp. Ass'n, Inc. v. Mat-Su Coal. for Choice, 948 P.2d 963 (Alaska 1997); Comm. To Defend Reprod. Rts. v. Myers, 625 P.2d 779 (Cal. 1981); Women of State of Minn. by Doe v. Gomez, 542 N.W.2d 17 (Minn. 1995); Planned Parenthood of Middle Tennessee v. Sundquist, 38 S.W.3d 1 (Tenn. 2000).

Page 4
July 2, 2024
2024AP330-OA          Planned Parenthood of Wisconsin v. Urmanski

suggestion that doing so is so out of line with the court's practice that it implies foul play. To the contrary, it is not particularly groundbreaking for this court to schedule two cases with interdependent issues at the same time. See In re Douglas D., 2001 WI 47, 243 Wis. 2d 204, 626 N.W.2d 725, and In re A.S., 2001 WI 48, 243 Wis. 2d 173, 626 N.W.2d 712 (a pair of First Amendment challenges to the Disorderly Conduct statute that were scheduled for argument on the same day and whose opinions were released on the same day); Water Well Sols. Serv. Grp., Inc. v. Consol. Ins. Co., 2016 WI 54, 369 Wis. 2d 607, 881 N.W.2d 285, and Marks v. Houston Cas. Co., 2016 WI 53, 369 Wis. 2d 547, 881 N.W.2d 309 (a pair of insurance cases that, similarly, were argued on the same day and whose opinions were released on the same day). The U.S. Supreme Court also engages in this practice. See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 600 U.S. 181 (2023) (consolidating two separate affirmative action cases).

Nor is it unusual for the court to hear statutory and constitutional claims at the same time. See, e.g., James v. Heinrich, 2021 WI 58, 397 Wis. 2d 517, 960 N.W.2d 360 (reviewing three consolidated original actions challenging public health orders on both statutory and constitutional grounds). The court does not know how it should resolve a particular case until it reviews all of the arguments made by the parties. Consequently, it makes good sense to hear all of the relevant legal arguments before rendering a decision, even if ultimately we may not have to resolve some of the issues raised in one or both of these cases. For an example of how the U.S. Supreme Court took essentially the same approach, see Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014), where the court consolidated a statutory and a constitutional challenge to federal health care regulations. It ultimately decided the case on only one of those grounds. Id. at 736 ("Our decision on that statutory question makes it unnecessary to reach the First Amendment claim raised.").

Coordinating cases with intersecting issues does not make us rule or law breakers as Justice Hagedorn charges. Rather it is indicative of this court taking its business seriously and determining the best way to hear a case and reach a decision while also paying attention to other cases that may have similar issues. Coordination makes sense both from a judicial economy and a coherency-of-the-law perspective.

More troubling than leveling false accusations against his colleagues is Justice Hagedorn's characterization of the question presented in this petition as a "pet issue." Regardless of one's views on the morality, legality, or constitutionality of abortion, it is undeniable that abortion regulation is an issue with immense personal and practical significance to many Wisconsinites. Characterizing and reducing abortion to a "pet issue" is disrespectful, demeaning, and derisive to adults and children who have been impacted by abortion laws and litigation.

Page 5
July 2, 2024
2024AP330-OA          Planned Parenthood of Wisconsin v. Urmanski

Accusing the court of playing politics seems to be a consistent refrain trotted out whenever the court makes a decision some of my colleagues dislike.[6] But it is the job of this court to decide matters of law important to this state even when they arouse passionate disagreement. For that reason, I respectfully concur.

I am authorized to state that Justices ANN WALSH BRADLEY, REBECCA FRANK DALLET, and JANET C. PROTASIEWICZ join this concurrence.

REBECCA GRASSL BRADLEY, J. (*dissenting*). "[T]he assertion by judges of a power to give legal effect to their own opinions and values, what is that if not a claim to political power?"[7] By granting this petition, Ann Walsh Bradley, Rebecca Frank Dallet, Jill Karofsky, and Janet Protasiewicz continue their crusade to impose their values on the people of Wisconsin, wielding raw political power constitutionally vested in the legislature alone. The people of Wisconsin never consented to unchecked rule by four lawyers[8] who continue to disgrace the institution of the judiciary by entangling this court in policy issues constitutionally reserved to the People and their legislative representatives. This case again marks the court's perilous entrance into the political arena where it does not belong and further delegitimizes this court as a non-partisan institution.

Planned Parenthood's original action petition raises a constitutional issue, which need not and should not be decided before the court resolves the statutory challenge in Kaul v. Urmanski, No. 2023AP2362. Should the majority decree a right to abortion under the Wisconsin Constitution, it will mire this court in "a profound moral issue" that politicized the federal courts

---

[6] See, e.g., Brown v. Wisconsin Elections Comm'n, No. 2024AP232, unpublished order at 7 (Wis. Jun. 11, 2024) (Rebecca Grassl Bradley, J., dissenting); Evers v. Marklein, No. 2023AP2020-OA, unpublished order at 2 (Rebecca Grassl Bradley, J., dissenting); Clarke v. Wisconsin Elections Comm'n, 2023 WI 79, ¶188, 410 Wis.2d 1, 998 N.W.2d 370 (Rebecca Grassl Bradley, J., dissenting).

[7] Yonatan Green, The Peculiar Case of the Israeli Legal System, 24 Federalist Soc'y Rev. 212, 218 (2023) (quoting Jonathan Sumption, The Reith Lectures 2019: Law and the Decline of Politics, BBC Radio 21 (May 21, 2019)).

[8] Strangely, Justice Karofsky takes umbrage with being called a "lawyer." But we are lawyers. In treating the profession as a pejorative, Justice Karofsky perhaps reveals her unfamiliarity with Chief Justice John Roberts's observation that "in our democratic republic" policy decisions "should rest with the people acting through their elected representatives," not "with five lawyers who happen to hold commissions authorizing them to resolve legal disputes according to law." Obergefell v. Hodges, 576 U.S. 644, 688 (2015) (Roberts, C.J., dissenting). When the United States Supreme Court constitutionalizes social policy, Justice Antonin Scalia said the Court makes "the Ruler of 320 million Americans coast-to-coast, [] a majority of the nine lawyers on the Supreme Court." Id. at 714 (Scalia, J., dissenting). The people elect legislative representatives to make social policy, not lawyers who hold judicial office.

Page 6
July 2, 2024
2024AP330-OA          Planned Parenthood of Wisconsin v. Urmanski

for more than fifty years. Dobbs v. Jackson Women's Health Org., 597 U.S. 215, 223 (2022). The United States Supreme Court in Dobbs recognized the impropriety of judicial determinations of abortion policy and "return[ed] that authority to the people and their elected representatives." Id. at 302. Should the majority in this case improperly "barrel[] its way to a constitutional challenge no longer in play[,]"[9] it will cement the majority's dangerous politicization of this court, forever polluting judicial races with policy-laden rhetoric antithetical to the proper role of judges as neutral arbiters of the law.

As with other cases the new majority has decided, the outcome appears to be predetermined. Janet Protasiewicz riddled her campaign rhetoric with innuendos about her "values" on abortion, gesturing to her financial supporters[10] how she would rule on abortion-related cases.[11] When asked if she has ever ruled on a case contrary to her values, Protasiewicz dodged and obfuscated.[12] Her position on abortion featured prominently during her successful campaign for a seat on this court, as evidenced by the following social media post:

---

[9] James v. Heinrich, 2021 WI 58, ¶87, 397 Wis. 2d 517, 960 N.W.2d 350 (Dallet, J., dissenting).

[10] "State and national Planned Parenthood political groups say they expect to spend in the seven figures, but would say only that their total would be more than $1 million to support [Janet] Protasiewicz. Their strategy will include radio, TV and online advertising, plus direct mail. Planned Parenthood Advocates of Wisconsin has hired staff across the state to support door-to-door and other campaign efforts." Scott Bauer, Debate on Abortion Access Turns to Wisconsin High Court Race, Associated Press (Feb. 22, 2023), https://apnews.com/article/abortion-biden-politics-wisconsin-state-government-2f7181886af566e3c51613389df462e0.

[11] In a statement endorsing Protasiewicz's campaign, the Executive Director of Planned Parenthood Advocates of Wisconsin stated, "We strongly believe we need someone on the Wisconsin Supreme Court who prioritizes reproductive health for the people of Wisconsin, and Planned Parenthood Advocates of Wisconsin trust Judge Protasiewicz to uphold our values on the Supreme Court." PPAWI Announces its Endorsement of Judge Janet Protasiewicz for Wisconsin Supreme Court, Planned Parenthood Action (Feb. 22, 2023), https://www.plannedparenthoodaction.org/planned-parenthood-advocates-wisconsin/newsroom/ppawi-announces-its-endorsement-of-judge-janet-protasiewicz-for-wisconsin-supreme-court (emphasis added).

[12] WISN 12 News, Janet Protasiewicz 1-on-1, YouTube, at 4:16 (Jan. 22, 2023), https://www.youtube.com/watch?v=tVbXtVOY_no.

8

Page 7
July 2, 2024
2024AP330-OA          <u>Planned Parenthood of Wisconsin v. Urmanski</u>



   While judicial candidates cannot control what third parties (much less Hollywood elites) say about them, candidates have absolute control over what they repost on social media. Reposting a statement conveying that her election would mean a "win" for abortion rights was a deliberate choice by Protasiewicz and signaled to her supporters how she would rule on abortion-related cases. Wisconsin's Code of Judicial Conduct governs such statements:

> [A] judge shall recuse . . . herself in a proceeding when the facts and circumstances the judge knows or reasonably should know establish one of the following or when reasonable, well-informed persons knowledgeable about judicial ethics standards and the justice system and aware of the facts and circumstances the judge knows or reasonably should know would reasonably question the judge's ability to be impartial:

>          . . .

> (f) The judge, while a judge or a candidate for judicial office, has made a public statement that commits, <u>or appears to commit</u>, the judge with respect to any of the following:

>    1. An issue in the proceeding.
>    2. The controversy in the proceeding.

Page 8
July 2, 2024
2024AP330-OA          Planned Parenthood of Wisconsin v. Urmanski

Supreme Court Rule (SCR) 60.04(4)(f) (emphasis added).[13]  The First Amendment may permit Protasiewicz to "air" her "grievances," but retweeting Julia Louis-Dreyfus' inducement to vote for Protasiewicz in order to "win" "[a]bortion rights" reflects Protasiewicz's commitment to vote accordingly, irrespective of the law.  Shielding political and policy statements under the guise of "values" does not ameliorate the objective bias tainting Protasiewicz's ethically improper participation in this case, which petitioners brought only after their substantial financial support for Protasiewicz's campaign secured her position on this court.[14]

Accepting the constitutional question, especially in light of Protasiewicz's campaign statements, suggests any decision in this case will not be tethered to the text of the state constitution but will be dictated by the policy preferences of the progressive majority.  When constitutional interpretation becomes unmoored from the text, "and the theoretical opinions of individuals are allowed to control its meaning, we have no longer a Constitution; we are under the government of individual men, who for the time being have power to declare what the Constitution is, according to their own views of what it ought to mean." Dred Scott v. Sandford, 19 How. 393, 621 (1857) (Curtis, J., dissenting).  If the progressive majority decides to answer the constitutional question, it will inevitably have to engage in the decidedly non-judicial line-drawing featured in Roe v. Wade, which erroneously constitutionalized a federal right to abortion.  Dobbs, 597 U.S. at 349 (Roberts, C.J., concurring in the judgment) (criticizing the Roe trimester framework as "more closely resembl[ing] a regulatory code than a body of constitutional law.").  And if the progressive majority imposes a judicially engineered standard for assessing abortion statutes, it will be "inherently manipulable and will prove hopelessly unworkable in practice." Planned Parenthood v. Casey, 505 U.S. 833, 986 (1992) (Scalia, J., concurring in the judgment in part and dissenting in part).  Perhaps the progressive majority will settle on a 20-week limit on abortion as

---

[13] Justice Karofsky asks, "How can Justice Rebecca Grassl Bradley have standing to criticize a colleague for signaling her values on the campaign trail while she did that on her own?"  Basic judicial ethics answers her question.  Setting aside the fact that hunting is a sport, not a "value," I imagine Justice Karofsky means to suggest I "signaled" my support for the Second Amendment.  Judges swear an oath to support the Constitution of the United States, of which the Second Amendment is a part.  In contrast, as a candidate, Protasiewicz declared her personal position on abortion law, an issue likely to come before this court post-Dobbs, thereby at least appearing to commit herself to an issue the court would be, and now has been, called upon to resolve.

[14] Justice Karofsky poses a second question:  "How can [Justice Rebecca Grassl Bradley] call for the recusal of one of her colleagues when she herself voted against a stronger recusal rule while in the majority?"  We don't need stronger recusal rules; we need judges to abide by the ones we already have, which require judges to recuse from cases on which they are incapable of being impartial.

Page 9
July 2, 2024
2024AP330-OA          Planned Parenthood of Wisconsin v. Urmanski

Protasiewicz suggested during her campaign.[15]  One will search in vain for any law authorizing the court to supplant the people's prerogative to make this choice.

In inserting itself into this profound moral question, this court unnecessarily and most imprudently tackles an issue that arouses the deepest passions of Wisconsin's citizens.  The matter should be left to the People to decide through the democratic process designed for resolving such policy questions, with the vigorous debate naturally accompanying the legislative process.[16]  The new majority's willingness to remove the issue from the democratic process shows grave disrespect for the People's sovereignty.  As Theodore Roosevelt once declared in his second presidential campaign: "The people must know better than the court what their own morality and their own opinion is. I ask that . . . you the people, be given the chance to state your own views of justice and public morality, and not sit meekly by and have your views announced for you[.]"[17]

I end with the words of then-Judge Karofsky as she was campaigning for a seat on this court: "There's also a disturbing trend lately of . . . circumventing the judicial process and having the Supreme Court take cases directly, instead of letting them work their way first through a Circuit Court, then the Court of Appeals, and then to the Wisconsin Supreme Court."[18]  In yet another instance of the new majority abandoning principles when they become inconvenient, Justice Karofsky and her three colleagues engage in the exact same behavior they once condemned,

---

[15] In an interview with the Journal Sentinel, Protasiewicz indicated a 20-week ban on abortions "is probably constitutional." Wisconsin Supreme Court Candidate Janet Protasiewicz on Abortion Restrictions, Milwaukee J. Sentinel (Mar. 24, 2023), https://www.jsonline.com/videos/news/politics/elections/2023/03/24/wisconsin-supreme-court-candidate-janet-protasiewicz-abortion-restrictions/11535717002/.

[16] Anya Van Wagtendonk, Assembly Republicans Approve 14-week Limit on Abortion Access, Wisconsin Public Radio (Jan. 25, 2024), https://www.wpr.org/news/assembly-republicans-approve-14-week-limit-on-abortion-access (discussing legislative attempts to place abortion restrictions on a statewide referendum).

[17] Address by Theodore Roosevelt on Right of the People to Rule, S. Doc. 62-473, at 7 (2d Sess. 1912).

[18] Jill Karofsky, ACLU-Wisconsin (last visited June 4, 2024), https://www.aclu-wi.org/en/biographies/jill-karofsky.

11

Page 10
July 2, 2024
2024AP330-OA               Planned Parenthood of Wisconsin v. Urmanski

expediting politically charged cases to appease their progressive supporters.[19] "It's what political activists do when they want to hide their goals, and it is unbecoming of the Wisconsin Supreme Court."[20] How prescient.[21]

BRIAN HAGEDORN, J. (*dissenting*). The court's actions here are perplexing at best, and outcome-oriented at worst. The petitioners ask this court to create and define a new constitutional right under the Wisconsin Constitution—either for a woman to obtain an abortion, or for a doctor to perform one. The petitioners argue that we need only reach their constitutional claims if this court determines that Wis. Stat. § 940.04 does not apply to consensual abortions or is otherwise no longer operative, the very questions we will address in Kaul v. Urmanski, No. 2023AP2362. Their arguments, however, are broader, and may implicate every statute affecting abortion. Moreover, they bring this case as an original action, skipping the normal litigation

---

[19] Justice Karofsky complains that "[a]ccusing the court of playing politics seems to be a consistent refrain trotted out whenever the court makes a decision some of my colleagues dislike. But it is the job of this court to decide matters of law important to this state even when they arouse passionate disagreement." As one of my colleagues once put it, "[w]hat comes to mind is the adage of psychological projection—'the pot calling the kettle black.'" Teigen v. Wis. Elections Comm'n, 2022 WI 64, ¶247, 403 Wis. 2d 607, 976 N.W.2d 519 (Ann Walsh Bradley, J., dissenting). During her campaign, then-Judge Karofsky hurled the following reckless slurs against the court: "People in Wisconsin feel like it's corrupt. Because what they see are justices on the Supreme Court who make decisions before anyone ever gets to the state Supreme Court chamber, justices who do not follow the rule of law, justices who are acting like politicians, and that feels like corruption to people." Karofsky on 'UpFront' Says People Feel Wisconsin Supreme Court Is Corrupt, WisPolitics (Mar. 2, 2020), https://www.wispolitics.com/2020/karofsky-on-upfront-says-people-feel-wisconsin-supreme-court-is-corrupt/. What also comes to mind is the deliberate spreading of misinformation, otherwise known as a form of "gaslighting."

[20] Jill Karofsky, ACLU-Wisconsin (last visited June 4, 2024), https://www.aclu-wi.org/en/biographies/jill-karofsky.

[21] As her final question, Justice Karofsky asks "how can [Justice Rebecca Grassl Bradley] complain about the court granting an original action petition when in the past she too voted to grant original actions tackling controversial constitutional issues?" Generally, original action petitions raising constitutional issues are perfectly appropriate for the court to grant. I simply point out the hypocrisy of four colleagues who objected in the past when the court granted cases on issues they did not "value." On that note, if Justice Karofsky truly believed "it makes good sense to hear all of the relevant legal arguments before rendering a decision," then she would grant the motion of the pro-life organizations seeking intervention in this matter. See Order Denying Motion to Intervene, Planned Parenthood of Wisconsin v. Urmanski, No. 2024AP330-OA, unpublished order (Wis. July 2, 2024).

Page 11
July 2, 2024
2024AP330-OA          Planned Parenthood of Wisconsin v. Urmanski

process.[22] If this were an ordinary legal matter, we would either dismiss this petition or hold it in abeyance pending our decision in Kaul. So why aren't we doing that here? Everyone knows the answer.

Putting aside the merits of this case, which we will examine in due course, the majority continues to play politics with its pet issues.[23] Abortion divides the public, with passionate advocates on all sides. It is all the more important in politically charged cases like this for us to act like a court and not play favorites. How disappointing that at the moment of testing, the majority fails to apply the same rules to everyone. The signal to a watching public is that, when

---

[22] As I have recently cautioned, original actions have their place, but come with a cost. Namely, foregoing the normal litigation process deprives the parties of the ability to "hone, winnow, and refine" their legal arguments through the adversarial process. Evers v. Marklein, No. 2023AP2020, unpublished order at 4 (Wis. Feb. 2, 2024) (Hagedorn, J., dissenting). It also denies us the opportunity to "benefit from the work of our colleagues in the circuit court and court of appeals." Id.

And there is no rush here. The parties only recently brought this case despite the legal status of § 940.04 being a live issue since Dobbs was decided over two years ago. And if the legislature's ability to regulate abortion is circumscribed by the Wisconsin Constitution, such a claim is 176 years in the making (the constitution was ratified in 1848)—hardly the sort of legal emergency demanding expedited consideration. But once more, the court "does not see the prudence of patience and [judicial] humility," and again "rush[es] to draw constitutional lines" while it has the power to do so. Id. at 5. If ever there was a time to proceed with caution to get things right, it is here.

[23] Justice Karofsky takes umbrage at this characterization and suggests it is "disrespectful, demeaning, and derisive" to those "impacted by abortion laws and litigation." She misunderstands my point, so let me clarify. Justice Karofsky is correct that abortion is a sensitive matter; nothing in this writing disparages those with deeply held beliefs regarding abortion policy and practice.

My concern is with our court. Like it or not, these kinds of cases are a testing ground. Many of us on this court surely have personal views that mirror the diversity of opinion in Wisconsin. We must ensure, then, that we do not let the policy outcomes we prefer guide our judicial decision-making. There must be daylight between our personal views and the law. Or else, why have judges at all?

What is troubling, then, is not the "pet issues" themselves—many of which raise legitimate legal questions on important issues—but the special treatment certain matters seem to be receiving from the court. While in theory one could hear this original action raising a broad constitutional challenge at the same time as the statutory issue, given the procedural posture of this case, we would not do so if this wasn't about abortion. It brings me no joy to say these things. Even so, I cannot but sound the alarm.

13

Page 12
July 2, 2024
2024AP330-OA                    Planned Parenthood of Wisconsin v. Urmanski

certain policy issues touch the right nerve, this court will follow the party line, not the law.  I respectfully dissent.

I am authorized to state that Chief Justice ANNETTE KINGSLAND ZIEGLER joins this dissent.

---

Samuel A. Christensen
Clerk of Supreme Court

Page 13
July 2, 2024
2024AP330-OA          Planned Parenthood of Wisconsin v. Urmanski


Distribution List Continued:

Matthew J. Thome
Electronic Notice

Aaron D. Birnbaum
Electronic Notice

Samuel J. Leib
Electronic Notice

Carly Gerads
Electronic Notice

Clementine Uwabera
Electronic Notice

Douglas M. Poland
Electronic Notice

Rick Esenberg
Luke N. Berg
Nathalie E. Burmeister
Wisconsin Institute for Law & Liberty
330 E. Kilbourn Ave., Ste. 725
Milwaukee, WI 53202

Andrew Bath
Thomas More Society
309 W. Washington St., Ste. 1250
Chicago, IL 60606